REDMANN, Judge
(dissenting in part).
“No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated.” LSA-C.C. art. 2264 (emphasis supplied).
*902 “All sales, contracts and judgments affecting immovable property, which shall not he so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
“The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.” LSA-C.C. art. 2266 (emphasis supplied).
The majority’s theory is that an unrecorded purchase is effective in favor of third persons, but not “against” them, so construing C.C. art. 2264. But the language of art. 2266 is that unrecorded acts “are utterly null and void” and only “affect” third parties from recordation.
The only way of construing these articles in pari materia together, as commanded by C.C. art. 17, so as to give effect to both articles, is by interpreting each literally, and restricting each to what it says. Art. 2264 only says unrecorded acts are not effective “against” third persons; it does not say such acts are effective “in favor of” third persons, and art. 2266 says they are “utterly null and void, except between the parties”.
The harm in holding that unrecorded instruments can, in spite of art. 2266, “affect” third parties in their favor may be shown by an example. O sells to A by credit sale with vendor’s privilege and mortgage. A few hours or a day later, but before recordation of this instrument in conveyance or mortgage records, A sells to B (and this purchase is immediately recorded). If A’s unrecorded purchase is effective in favor of third party B, but the unrecorded vendor’s privilege and mortgage are not effective “against” B, then B has acquired title effective against the vendor (and the world) free and clear of the vendor’s privilege and mortgage. (The same would be true under the doctrine of after-acquired title, see Stokes v. Shackleford, 12 La. 170 (1838), if A had sold to B before A acquired from O.)
Since the whole concept of vendor’s privilege does provide a preference for vendors, I am unable to imagine any social or economic purpose which would justify the result of so superlatively easy a defeat of the vendor’s privilege.
Such a result is avoidable by a literal application of art. 2266, holding A’s unrecorded purchase “utterly null and void”, unable to “affect” third persons until re-cordation. In all parishes except Orleans, filing for registry in conveyance and for recordation in mortgage records is done with the clerk of court and both filings might be accomplished simultaneously. In Orleans, where the register and the recorder are separate offices, and in any parish where in fact the clerk of court may have separate filing stations in his office for conveyances and mortgages, perhaps the vendor should file first for recordation in the mortgage records. At least the vendor has the possibility of thus preventing the purchaser from having recorded title (effective as to third persons) prior to the effectiveness of the vendor’s privilege and mortgage. But there is no way the vendor can prevent unrecorded title prior to recor-dation, whether recordation occurs six minutes, six hours or, as here, six days later. Thus it appears to me indispensable to apply art. 2266 literally.
In Heirs of Gallaugher v. Hebrew Congregation, 3S La.Ann. 829 (1883), the assertion that an earlier recorded judicial mortgage attaches from the time of unrecorded purchase to an immovable purchased by the judgment debtor was unnecessary to the decision. The judgment debtor’s purchase was in fact recorded at the time the case arose. The only question in the case was whether the judicial mortgage might be enforced against the property in the hands of a third possessor, who had purchased from the judgment debtor, prior to recordation of the judgment debt- or’s purchase. Since the third possessor it *903 self was not a party to the judgment debt- or’s purchase of the property, that purchase was “utterly null and void” as to it, until recorded. Only after the judgment debtor’s acquisition was recorded could the third possessor acquire title; but from the moment of that indispensable recordation the earlier-recorded judicial mortgage first attached, LSA-C.C. arts. 3304 and 3328, and the third possessor’s title was from its effective inception burdened with the mortgage.
The judgment debtor’s vendor, in Giva-novitch v. Hebrew Congregation of Baton Rouge, 36 La.Ann. 272 (1884), unsuccessfully sought to assert his vendor’s privilege as superior to the judicial mortgage.
The facts recited in these two cases are:
(1) July 18, 1872, judgment recorded creating judicial mortgage against Delacroix.
(2) October 1, 1875, credit sale by Giva-novitch to Delacroix.
(3) September 12, 1876, sale by Delacroix to Hebrew Congregation with assumption of “Delacroix’s debt” to Givanovitch.
(4) September 12, 1876, filing for registry in conveyance book of credit sale from Givanovitch to Delacroix (with actual inscription September 15, 1876).
(5) September 16, 1876, actual inscription in conveyance book (? — 35 La.Ann. at 830) and mortgage and privilege book (36 La.Ann. at 273) of sale from Delacroix to Congregation (date of filing not shown by majority opinions; dissenter says September 12, 1876; 35 La.Ann. at 873).
(6) September 21, 1876, (actual?) recording in mortgage and privilege book of credit sale from Givanovitch to Delacroix.
Thus Givanovitch’s vendor’s privilege was not recorded in the mortgage book until nearly a year after the date of the act of credit sale. So even if Delacroix had not sold the property his judgment creditor’s mortgage would have outranked Giva-novitch’s vendor’s privilege, since a privilege “ * * * shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded within seven days from the date of the act or obligation of indebtedness. * * * ” LSA-C.C. art. 3274.
And, except for Congregation’s assumption of Delacroix’s debt, Congregation would have taken title clear of Givanov-itch’s unrecorded vendor’s privilege and conventional mortgage (although Givanov-itch might still have rescinded his credit sale to Delacroix; C.C. art. 2561; Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944); see also Porche v. Le Blanc, 12 La.Ann. 778, 781 (1857)).
In the matter before us, the act importing vendor’s privilege was recorded within the delay allowed by C.C. art. 3274 (and the contesting preference is not a mortgage) ; thus the holding of Givanovitch v. Hebrew Congregation does not control.
Since, however, art. 3274 purports to protect privileged creditors only against any intervening “mortgage”, it does not protect against other privileges.
The question thus appears to me to be whether a vendor’s privilege outranks a materialman’s privilege which (being dependent on the vendor’s act of sale to make the materialman’s debtor the owner of the property before he can subject it to the privilege) cannot attach to the property until the otherwise “utterly null and void” act of sale to the debtor is registered in the conveyance records. In our case, that registry and the recordation of the vendor’s privilege both occur on the same day.
The ranking of materialmen’s privileges with a vendor’s privilege, where no building contract has been recorded as and when required, is fixed by R.S. 9:4812. *904 That statute stipulates that the building contract privilege “shall be superior to all other claims against the land and improvements except * * * a bona fide vendor’s privilege * * * if the vendor’s privilege * * * exists and has been duly recorded before the work or labor is begun or any material is furnished.
The burden of proof lies upon the vendor’s privilege (or mortgage) claimant to show that his recordation precedes any work or furnishing of material, since the vendor’s claim is that he comes within an exception to the statute’s general rule; Hortman-Salmen Co. v. White, 168 La. 1049, 123 So. 709 (1929).
In a case like ours, where it appears work is in continuous progress prior to the time the party contracting as owner actually becomes owner, then from the moment registry of his purchase in the conveyance records makes him owner quoad third persons, work is being done and material supplied for the owner, and a vendor’s privilege (or mortgage) which is not recorded in the mortgage records “before” the moment of registry in the conveyance records is outranked by the materialman.
Thus, under the provisions of R.S. 9:4812, the materialmen here have a privilege for materials supplied to the owner. The only materials supplied to Schnell as owner were those supplied on and after May 16, the date Schnell’s purchase was registered in the conveyance records and he became the owner as to persons not parties to the purchase. Security Homestead has not shown that its sale with vendor’s privilege was recorded in the mortgage records before it was registered in the conveyance records. Perhaps it could not; R.S. 9:5141 requires a record of the hour and minute only of mortgage office recordation, and conveyance office records would presumably not show whether registry there occurred before or after a mortgage recordation on the same day.
Because of the importance of the principles involved, I cannot assent entirely to the majority’s opinion and therefore dissent from recognition of the materialmen’s privileges prior to May 16, the date Schnell became the owner insofar as the materialmen are concerned.